IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

PHYLLIS DAY                                                                                     PLAINTIFF

V.                             NO. 4:10-cv-00075 JWC

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration                                          DEFENDANT

MEMORANDUM OPINION AND ORDER

Plaintiff, Phyllis Day, seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits and supplemental security income (SSI) benefits. Both parties have submitted briefs (docs. 11, 14). For the reasons that follow, the Court[1] **reverses** the Commissioner's decision and **remands** the case for further administrative proceedings.

I.

Judicial review of the Commissioner's denial of benefits examines whether the decision is based on legal error, and whether the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. §§ 405(g), 1383(c)(3); *Wildman v. Astrue*, 596 F.3d 959, 963 (8th Cir. 2010). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In its review, the Court should consider

---

[1]The parties have consented to the jurisdiction of the United States Magistrate Judge (doc. 3).

evidence supporting the Commissioner's decision as well as evidence detracting from it. *Wildman*, 596 F.3d at 964.

II.

In her application documents and at the hearing before the ALJ, Plaintiff alleged inability to work since January 1, 2004, due to fibromyalgia, "crippling arthritis," the inability to lift her arms, headaches, constant pain "all over," high blood pressure, depression, and stress. (Tr. 106, 113, 448-52.) She was born on July 13, 1959, making her forty-nine years old at the time of the hearing, and she has an eleventh-grade education. (Tr.111, 441-42.) She has past work as a caregiver at a daycare center, and as a school paraprofessional. (Tr. 107, 130, 443.)

Under the applicable law, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The regulations provide a five-step sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). Basically, those procedures require the ALJ to take into account whether a claimant is working, whether the claimant's physical or mental impairments are severe, whether the impairments meet or equal an impairment listed in the regulations, whether the impairments prevent a resumption of work done in the past, and whether they preclude any other type of work. *Id.*

Here, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. The ALJ next determined, at step two, that Plaintiff suffered from a severe impairment of fibromyalgia, but that she did not have an impairment or combination of impairments equaling a step-three listed impairment as contained in the regulations. At step four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform less than a full range of light work, and that her past work as a daycare worker did not require the performance of work-related activities precluded by this RFC. The ALJ thus found that Plaintiff could perform her past relevant work and was not disabled, ending his analysis at step four. (Tr. 8-15.) Plaintiff pursued administrative review with no success, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-4.)

Plaintiff argues that the ALJ's decision that she is not disabled is not supported by substantial evidence on the record as a whole and should be reversed. Specifically, Plaintiff contends that the ALJ erred: (1) in determining that she could perform "less than a full range of light work" in that he did not appear to consider all the evidence; (2) in assessing her credibility; and (3) in determining that she could perform her past work.

III.

RFC is defined as "the most [the claimant] can still do" in a work setting "on a regular and continuing basis" despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), (b) & (c), 416.945(a)(1), (b) & (c). The ALJ bears the primary responsibility for assessing a claimant's RFC at step four of the sequential evaluation, based on all relevant evidence, including medical records, observations and opinions of treating

physicians and others, and the claimant's own descriptions of his or her limitations. *Id.* §§ 404.1527(e)(2), 404.1545(a)(3), 416.927(e)(2), 416.945(a)(3); *see Wildman*, 596 F.3d at 969.

Here, the ALJ found that Plaintiff had the RFC to perform less than the full range of light work, *i.e.*, the ability to frequently lift or carry up to ten pounds, and to stand or walk up to six hours out of an eight-hour workday, with a sit/stand option. (Tr. 11.) He said he made this determination after considering all symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence, as well as the opinion evidence, in accordance with the applicable rulings and regulations. (Tr. 11.) He stated that Plaintiff's longitudinal medical history was "not necessarily consistent" with her allegation of disability and was "fairly non-definitive." He noted that there was "some mention of degenerative changes, but little follow-through for treatment," and that her primary care physician had prescribed an arthritis medication which was not effective. The ALJ further stated that her treatment had "followed a conservative course." (Tr. 12.)

The ALJ then discussed the findings of Joseph F. Farmer, M.D., who performed a consultative general physical examination on September 12, 2007. (Tr. 12, 285, 293-99.) Dr. Farmer found multiple trigger points over the occiput, border of the scapula, acromial and bicipital bursa, medial and lateral epicondyles of the elbows, and sacroiliac notches of the back. (Tr. 297.) He observed that Plaintiff had full range of motion in all joints, no muscle weakness or atrophy, normal hand function, and normal gait and coordination. (Tr. 296-97.) He diagnosed fibromyalgia[2] and noted a reported history of dermatomyositis.[3]

---

[2]This chronic condition is characterized by inflammation of the fibrous and connective tissue, causing long-term but variable levels of muscle and joint pain, stiffness, and fatigue. It is diagnosed

As a result of his examination, Dr. Farmer concluded that Plaintiff "was not limited in her ability to walk, stand, sit, lift, carry, handle, finger, see, hear, or speak." (Tr. 299.)

The ALJ stated that he also had considered the physical RFC opinion of a state agency medical consultant who reviewed Plaintiff's medical records, but the ALJ noted that the record had been supplemented with testimony and additional medical evidence. (Tr. 14, 300-08.)

Plaintiff asserts that the ALJ erred in basing his RFC determination on the reports of a non-treating physician (Dr. Farmer) and the report of the non-examining agency medical consultant, and should have placed more weight on evidence from a treating physician, Dr. Eleanor Lipsmeyer.

Dr. Lipsmeyer is a rheumatologist at the University of Arkansas for Medical Sciences (UAMS) and provided treatment for Plaintiff from December 2007 to August 2008. (Tr. 313-437.) Plaintiff testified at the administrative hearing that Dr. Lipsmeyer was currently the doctor taking care of her. (Tr. 447-48.) The ALJ did not mention Dr. Lipsmeyer, her treatment notes or observations, or any other UAMS records. In fact, the ALJ made no reference to Exhibit 8F, which consists of 125 pages of UAMS records, including Dr. Lipsmeyer's clinical notes and the results of laboratory tests and x-rays ordered by her.

As the Commissioner points out, many of Dr. Lipsmeyer's findings are consistent with those of Dr. Farmer. For instance, both diagnosed fibromyalgia, both observed full

---

based on widespread pain with tenderness in at least eleven of eighteen sites known as trigger points or tender points. *Brosnahan v. Barnhart*, 336 F.3d 671, 672 n.1 (8th Cir. 2003).

[3]This is a progressive condition characterized by symmetric proximal muscle weakness with elevated serum levels of muscle enzymes and a skin rash. Stedman's Medical Dictionary 107780 (27th ed. 2000).

range of motion in all joints, and both noted the absence of active synovitis. (Tr. 296, 299 [Farmer], 314, 329, 341, 385, 391 [Lipsmeyer].) Nevertheless, the unmentioned UAMS records contain other evidence that is supportive of Plaintiff's allegations of disabling pain and limitations, including:

- Her report to Dr. Lipsmeyer on December 4, 2007, that she was experiencing pain in her neck, shoulders and legs; muscle pain and tiredness; musculoskeletal "stiffness" in the mornings; poor sleep; and a "great deal of weakness" in her upper arms and thighs. (Tr. 389, 391.)

- Her reports on that date of "all over" pain, "all the time," and a pain level rating of ten on a scale of one to ten. (Tr. 391, 428.)

- Dr. Lipsmeyer's observation on that date that Plaintiff's muscle strength in the upper arm area was approximately 3/5, that she had "slightly reduced" hand grip and that her strength was "3-4/5 bilaterally upper and lower extremities." (Tr. 390-91.)

- Her diagnosis on that date of fibromyalgia syndrome, and her documentation of 18/18 tender points supporting that diagnosis.[4] (Tr. 391-92.)

- Her observations on that date that Plaintiff was "very tearful" and "quite depressed." (Tr. 390-91, 394.)

- Her prescription of Naprosyn (a nonsteriodal anti-inflammatory drug), Lexapro (for depression), and Flexeril (a muscle relaxant). (Tr. 392.)

- Dr. Lipsmeyer's observations at a follow-up appointment on December 26, 2007, that 18/18 tender points were still present, and that Plaintiff continued to be depressed. Current medications were continued, except for substituting Zoloft for Lexapro, which Plaintiff said made her dizzy. (Tr. 385.)

- UAMS emergency room records from April 22, 2008, showing that Plaintiff presented with complaints of weakness, tingling, and pain on the left and right sides, a constant headache (pain level of six), and pain in the thigh. (Tr. 362, 364, 378.)

---

[4]Dr. Farmer referred only to "multiple" tender points (Tr. 297), while Dr. Lipsmeyer documented, on two separate occasions, the existence of all 18 of the possible tender points (Tr. 385, 391).

- Documentation by emergency room medical personnel that her pain was mild, her condition was chronic, and musculoskeletal tenderness was observed. (Tr. 364-65.)

- Dr. Lipsmeyer's observations on April 23, 2008 that Plaintiff's right thigh was tender to palpation and she had slight pain upon internal and external rotation of the hip, and recommended dosage increases for Flexeril and Naprosyn. (Tr. 341, 343.)

- X-rays of the lumbosacral spine on that date showing degenerative spurring with prominent osteophyte formation on the right side of the second lumbar interspace. (Tr. 342, 353, 356.)

- Plaintiff's report on July 7, 2008, of continuing generalized aches and pains, a rash, and fragmented sleep. (Tr. 329.)

- Dr. Lipsmeyer's prescription on that date of Plaquenil, a medication used to treat rheumatoid arthritis and systemic lupus erythematosus (SLE). (Tr. 329.)

- Plaintiff's report on August 18, 2008, of depression, sleep problems, and a constant sharp pain in her right thigh and right groin, for which she gave a pain level rating of ten. (Tr. 314, 316, 320.)

- Her report that she had used anti-inflammatory drugs and Tylenol for her pain "without response," and that Plaquenil caused nausea, vomiting and sleep problems. (Tr. 314.)

- Dr. Lipsmeyer's observation on that date of tenderness over the right thigh laterally, diffuse tenderness with motion of the right femur, and reduced strength of 4/5, and her characterization of Plaintiff's pain as "very severe" and not consistent with degenerative joint disease. (Tr. 314-16.)

- Her diagnoses of fibromyalgia syndrome; right thigh disease, rule out AVN; (avascular necrosis); and SLE skin disease; and her continued prescription of Plaquenil. (Tr. 314, 317.)

- X-rays of the lumbar spine on that date showing mild sclerosis on the inferior surface of the L-1 vertebra, and degenerative changes at the first and second lumbar interspace, which had "increased slightly" since the last x-ray. (Tr. 314, 319.)

- X-rays of the pelvis on that date showing mild degenerative changes of the right hip joint. (Tr. 314, 319.)

Although an ALJ is "not required to discuss every piece of evidence submitted," *Wildman*, 596 F.3d at 966, he is required to "*consider* all evidence" in the case record, 20

C.F.R. §§ 404.1520(a)(3), 416.920(a)(3) (emphasis added).  Moreover, an ALJ must "always give good reasons" for the weight he gives to the opinions of a claimant's treating physicians.  *Id.* §§ 404.1527(d)(2), 416.920(d)(2).  This includes a treating physician's medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what a claimant is capable of doing despite the impairment, and any resulting restrictions. *Id.* §§ 404.1527(a)(2), 416.927(a)(2). Generally, more weight is afforded to the opinions of examining medical sources than those of non-examining sources, and to opinions of specialists on issues within their areas of expertise. *Id.* §§ 404.1527(d)(1) & (5), 416.927(d)(1) & (5).  A treating physician's opinion is generally entitled to "substantial weight;" however, an ALJ "may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence."  *Brown v. Astrue,* 611 F.3d 941, 951 (8th Cir. 2010).

      The ALJ's decision in this case does not indicate that he fulfilled his responsibilities under the regulations as to Dr. Lipsmeyer's records and the other records from UAMS.  The ALJ did not mention any of the reports from Plaintiff's treating rheumatologist, much less explain why he was disregarding or discounting them.  The ALJ did not mention any of the lab or x-ray results or other UAMS clinical notes.  Instead, he relied primarily upon the reports of a one-time consultative physician (who does not appear to be a specialist) and a non-examining agency medical consultant (who reviewed some but not all of the medical records), and other non-specific records from Plaintiff's primary care physician. Although Dr. Lipsmeyer did not express any opinions regarding Plaintiff's functional abilities, her observations and notes are still relevant to the RFC determination.  The case must be remanded so that the ALJ can explain what weight, if any, he gave to the medical evidence

from UAMS and Dr. Lipsmeyer, and explain why he discounted any opinions or observations of Dr. Lipsmeyer.

Additionally, many of the entries in the UAMS records recount Plaintiff's subjective complaints of pain, weakness, sleeping problems, fatigue and depression. These records thus substantiate her hearing testimony and other allegations regarding the intensity, persistence and limiting effects of her symptoms. In his decision, the ALJ found that her subjective allegations were not credible to the extent they were inconsistent with his RFC determination (Tr. 11-14); however, his credibility discussion does not mention any of the UAMS records and, again, it is unclear whether he considered them in determining that Plaintiff was not credible in depicting her impairments.

A claimant's subjective complaints may be discounted if they are inconsistent with the record as a whole. *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010). The ALJ is in the best position to gauge credibility and is granted deference in that regard if his findings are adequately explained and supported. *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008). *See* 20 C.F.R. §§ 404.1529(c), 416.929(c) (listing factors to consider);[5] *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984); SSR 96-7p, 1996 WL 374186, at *3, *5 (July 2, 1996). Among other things, the ALJ is to consider "statements and other information provided by treating or examining physicians ... about the symptoms and how they affect

---

[5] As stated in this regulation, the ALJ is required to consider, in addition to the objective medical evidence and the claimant's prior work record, statements and observations made by the claimant, his or her medical providers and any others regarding (1) the claimant's daily activities, (2) the location, duration, frequency and intensity of pain or other symptoms, (3) precipitating and aggravating factors, (4) type, dosage, effectiveness and side effects of medications, (5) non-medication treatments or other measures taken to alleviate pain and symptoms, and (6) functional limitations.

the individual," SSR 96-7p., *supra* at *1, as well as "statements made [by the claimant] to treating or examining medical sources," *id.* at *5.

As set forth above, the UAMS records contain relevant clinical notes from treating medical sources, as well as documentation of Plaintiff's complaints, regarding the intensity of her pain and other physical and psychological symptoms, her medications, and some indication of functional limitations. On remand, the ALJ should undertake a renewed credibility analysis in light of the additional medical evidence regarding her impairments.

Because the ALJ will need to re-evaluate on remand the credibility of Plaintiff's subjective complaints and, if necessary, reformulate her RFC, the Court cannot reach Plaintiff's last argument that the ALJ's hypothetical question to the vocational expert improperly failed to encompass Plaintiff's fatigue, pain and mental impairments.

IV.

ACCORDINGLY, the Commissioner's decision is **reversed** and this matter is **remanded** to the Commissioner for further proceedings consistent with this opinion. This is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO ORDERED this 31st day of March, 2011.

_____
UNITED STATES MAGISTRATE JUDGE